## TOWN OF BRIDGEWATER, et al. v. DEPARTMENT OF TAXES

[787 A.2d 1234]

No. 01-031

November 8, 2001. Plaintiffs are several towns and five individual taxpayers who challenged the assessment methods used by the director of the Division of Property Valuation and Review to calculate the equalized education property tax grand list required by the Equal Educational Opportunity Act of 1997 (Act 60). The State brought a motion to dismiss pursuant to V.R.C.P. 12(b)(1) on the ground that the court lacked subject matter jurisdiction. The Rutland Superior Court granted the motion on the grounds that plaintiffs failed to exhaust administrative remedies provided under 32 V.S.A. § 5408. We affirm.

Act 60 funds the state's education expenses through a general state support grant and local property tax. Each municipality must contribute an amount based on the equalized education property tax grand list. That amount, as well as the coefficient of dispersion, is determined by the director of the Division of Property Valuation and Review in the Department of Taxes. These calculations are based on the aggregate fair market value of all real property in each municipality. Plaintiffs brought suit in Rutland Superior Court claiming that the methods used by the director to determine the equalized education property tax grand lists in the municipalities do not comply with accepted industry standards of appraisal. Based on this argument, the suit alleges numerous state and federal constitutional violations as well as statutory violations.

The State brought a motion to dismiss on the ground that the superior court did not have subject matter jurisdiction. The State claimed that plaintiffs lacked standing, that their claims were moot and that plaintiffs failed to exhaust administrative remedies. The court granted the State's motion, finding that 32 V.S.A. § 5408 provides an administrative process by which municipalities can contest their equalized education grand list value as determined by the director. Because the court determined that the administrative process was an adequate forum for plaintiffs' claims, the court required that plaintiffs exhaust administrative remedies before seeking review in the superior court. This appeal followed.

Plaintiffs raise two challenges to the court's ruling. Primarily they argue that exhaustion is not required because the administrative remedy is not exclusive. If exhaustion is not the exclusive remedy, then, according to plaintiffs, exhaustion can be required only through the exercise of judicial discretion. Plaintiffs' second argument is that judicial discretion does not justify the court's decision

not to entertain the action for several reasons. First, they claim that the administrative process does not provide a remedy for the municipality plaintiffs. Similarly, they argue that there is no administrative relief that will satisfy the claims of the individual taxpayer plaintiffs. Plaintiffs also contend that the administrative process is inappropriate where constitutional challenges are raised. Finally, plaintiffs assert that requiring exhaustion of administrative remedies is inconsistent with goals of judicial economy.

We review a trial court's dismissal for lack of subject matter jurisdiction "de novo, with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." *Jordan v. State*, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997); V.R.C.P. 12(b)(1). The relevant statute in this case sets forth a detailed process by which a municipality may appeal its grand list value:

> (a) Not later than 30 days after the receipt by its clerk of a notice under section 5406 of this title, a municipality may petition the director of the division of property valuation and review for a redetermination of the municipality's equalized education property value and co-efficient of dispersion. Such petition shall be in writing and shall be signed by the chair of the legislative body of the municipality or its designee.

32 V.S.A. § 5408(a). The statute goes on to specify that "the director shall, after written notice, grant a hearing upon the petition to the aggrieved town." *Id.* § 5408(b). Should a municipality disagree with the director's redetermination of the equalized education property value, "[a] municipality . . . may appeal the redetermination to the valuation appeal board. . . . The appeal shall be heard de

novo . . . ." *Id.* § 5408(c). Only after this appeal does the statute authorize that "[a] municipality or the division of property valuation and review may appeal . . . to the superior court." *Id.* § 5408(d).

Plaintiffs' first argument is that § 5408 does not present an exclusive remedy to aggrieved municipalities, and that they may pursue the appeal directly in superior court. Plaintiffs rely principally on *Stone v. Errecart*, 165 Vt. 1, 675 A.2d 1322 (1996), which held that 32 V.S.A. § 5887 outlines the exclusive procedure to pursue a refund for certain taxes. In *Stone*, the statute requiring exhaustion specified that it was the "exclusive" remedy for taxpayers seeking that refund. 165 Vt. at 3, 675 A.2d at 1324; 32 V.S.A. § 5887. Plaintiffs argue that because § 5408 does not contain such specific language, their remedy is not limited to the one outlined in the statute.

Our paramount goal in statutory construction is to give effect to the Legislature's intent, *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990), and we apply the plain meaning of a statute where the language is clear and unambiguous. *Reed v. Glynn*, 168 Vt. 504, 506, 724 A.2d 464, 465 (1998). Where a statute creates administrative remedies, "a party must pursue, or 'exhaust,' all such remedies before turning to the courts for relief." *Rennie v. State*, 171 Vt. 584, 585, 762 A.2d 1272, 1274 (2000). In *Stone*, we stated that "[w]here the Legislature specifically mandates, exhaustion is required." 165 Vt. at 4, 675 A.2d at 1325. The question presented in this case, therefore, is whether § 5408 specifically mandates exhaustion. While it is true that § 5408 does not state explicitly that it is the "exclusive" remedy, it is difficult to conceive that the Legislature intended this section to be one of several methods of appeal. The remedy outlined in § 5408 is narrow, circumscribed and highly specific. Plaintiffs' formalistic argument

is unpersuasive because we have required exhaustion in cases where the statute does not contain the word "exclusive." See *In re D.A. Assocs.*, 150 Vt. 18, 20, 547 A.2d 1325, 1326 (1988) ("when an administrative remedy is established by statute or regulation, relief must not only be sought in accordance therewith, but must first be exhausted before recourse to the courts is available"); *Choquette v. Perrault*, 144 Vt. 218, 224, 475 A.2d 1078, 1082 (1984) ("The doctrine of exhaustion of administrative remedies requires that if an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the court will act.").

Plaintiffs offer no explanation as to when or why the prerequisite appeals to the director or the valuation appeal board ought to be waived, or provide any evidence that the Legislature even contemplated beginning appeals in the superior court. In other words, plaintiffs have given us no reason to conclude that the Legislature intended anything but that § 5408 would be the sole method of raising plaintiffs' challenge. In effect, plaintiffs are arguing that § 5408(a), (b), and (c) are merely advisory and that should a municipality choose, it may skip directly to § 5408(d) and present its appeal to the superior court. We decline to adopt a construction of § 5408 that would undermine the very scheme set out by the statute. We therefore reject plaintiffs' claims that exhaustion was the result of the exercise of judicial discretion. Rather, the statute required exhaustion, and the court properly granted the State's motion to dismiss on the grounds of lack of subject matter jurisdiction.

Our interpretation of the statute is consistent with legislative intent even in the face of the particular nature of plaintiffs' challenge to the assessment methods. Plaintiffs argue that because neither the municipalities nor the individual taxpayers can get the requested relief through the administrative process it serves no purpose to follow a procedure designed to challenge individual assessments. That is, what the municipalities and individual taxpayers seek is not a redetermination of a town's assessment and coefficient of dispersion, but rather a change in the methodology by which the assessments are calculated across the board. Although there may be cases where exhausting administrative remedies may be futile, this is not such an instance. Plaintiffs cannot supplant the administrative procedure of § 5408 simply by raising a systemic argument to challenge their grand list values and coefficients of dispersion rather than a fact-specific one. We have stated, "[t]he futility doctrine has been adopted as part of that discretion to dispense with unnecessary exhaustion of administrative remedies. It has no place, however, in the face of a clear legislative command that exhaustion is required." *Stone*, 165 Vt. at 4, 675 A.2d at 1325. As established above, the Legislature has established a clear route by which plaintiffs' appeal may be raised, and the superior court has no jurisdiction to consider this suit before that route has been traveled.

Plaintiffs' argument that exhaustion is not required when a constitutional challenge has been raised fails even though the administrative decision makers do not have the authority to strike down the valuation methods as unconstitutional. Administrative processes serve vital functions more substantial than mere adjudication of the dispute. Primarily, administrative processes develop the record "according to the more informal procedures of the administrative procedure act . . . rather than through the more formal procedures and rules of evidence applicable in court proceedings." *Id.* at 5, 675 A.2d at 1325. This function is especially valuable in a case such as this that will likely involve detailed findings regarding property values and complex formulas for calcu-

lating coefficients of dispersion. Thus, "[t]he Legislature may decide that even in a constitutional challenge, the relevant facts should be determined by the [administrative agency]." *Id.* If administrative hearings could be circumvented every time a complaint raises a constitutional issue, the public would lose the benefit of agency expertise, undermining the goal of agency review. See *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); see also *Stone*, 165 Vt. at 4, 675 A.2d at 1325; *Rennie*, 171 Vt. at 585, 762 A.2d at 1274 (exhaustion required to protect the administrative agency's authority, to use the agency's expertise, and to promote judicial efficiency through the development of the record).

Plaintiffs' final claim that requiring exhaustion is inconsistent with the goal of judicial efficiency carries no weight for the reasons outlined above. Efficiency is not a goal for which we strive at the expense of the Legislature's clear intent, or in lieu of agency fact-finding, or the exercise of agency expertise. That plaintiffs' challenge is facial in nature with multiple complainants, and that the administrative process has several layers of appeal, are similarly irrelevant.

*Affirmed.*